**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 08-1795

RICHARD W. JOHNSON,

Petitioner, Appellant,

v.

THOMAS DICKHAUT,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella, Siler,' and Howard, Circuit Judges.

Greg T. Schubert for appellant.
    Anne M. Thomas, Assistant Attorney General, Criminal Bureau,
with whom Martha Coakley, Attorney General, was on brief for the
appellee.

February 5, 2009

'Of the Sixth Circuit, sitting by designation.

**SILER, Circuit Judge.**   Petitioner Richard W. Johnson appeals the district court's decision denying his petition for a writ of habeas corpus.  He argues that the district court erred in concluding that the state court did not unreasonably apply federal law or unreasonably determine facts because the identification procedure used to convict him was unnecessarily suggestive and inherently unreliable.  For the following reasons, we will affirm the district court's judgment denying Johnson's petition for a writ of habeas corpus.

## I.   BACKGROUND

In 2003, Johnson was convicted on one count of intimidation to steal from a depository in violation of Mass. Gen. Laws ch. 265, § 21, and one count of armed robbery in violation of Mass. Gen. Laws ch. 265, § 17.  The charges arose from a robbery of a Shrewsbury CVS Pharmacy.  The Worcester Superior Court ("trial court") denied Johnson's motion to suppress evidence of the identification of him by Joanne Harrington because the identification was not influenced by "any suggestion whatsoever by the police" or by anything "that the police did or didn't do." Johnson eventually was sentenced to 11 to 13 years imprisonment. On appeal, the Massachusetts Appeals Court affirmed, finding no error in the trial court's denial of Johnson's motion to suppress. Commonwealth v. Johnson, 856 N.E.2d 206 (Mass. App. Ct. 2006) (unpublished table decision).  The Massachusetts Supreme Judicial

-2-

Court denied further review. Commonwealth v. Johnson, 862 N.E.2d
379 (Mass. 2007) (unpublished table decision).

In 2007, Johnson filed his petition for a writ of habeas
corpus in the federal district court pursuant to 28 U.S.C. § 2254.
After a hearing, the district court denied the petition and granted
a certificate of appealability on the identification issue.

Johnson advanced the same arguments as to why the
identification procedure was unnecessarily suggestive and
inherently unreliable before the state courts, the federal district
court, and now this court. Only Harrington was able to identify
Johnson as one of the robbers. Harrington was working the 6:00
p.m. to midnight shift when two men entered the otherwise empty
store. She described the men as wearing matching shirts and
shorts, very neat, with neat haircuts, and wearing hats with the
brim folded "so you really couldn't see their eyes." After a few
minutes of browsing, the shorter of the two men, Johnson,
approached her while she was sitting behind the prescription
counter in the back of the store. She explained that the shorter
man stood "right in front of her face" and looked her "right in the
eye." She said she got a good look at this face "for five or six
seconds" in "very good" lighting conditions. The shorter man then
lifted his shirt, showing her a gun that was tucked in the top of
his pants, and told her to "get up, go to the safe, and get him all
the oxycontin." She gave him seven bottles of oxycontin, and the

-3-

robbers left.   The whole incident lasted about five minutes.

Harrington was terrified by the incident, "kind of collapsed" and

"started crying" when the robbers left, and had emergency medical

technicians monitor her for rapid heart palpitations.

Harrington described the robbers to two police officers

- Officer Mentzer and Detective Cappucci - shortly after the

robbery.  She described the shorter man as a white male, 5'3" tall,

average build, clean shaven, baby-faced, early twenties, short

strawberry blond hair cut above his ears, neatly dressed in

matching beige clothes, Boston accent, and carrying a shiny handgun

with black grips which was tucked into his left waistband.   About

one week later, Detective Cappucci showed Harrington four arrays of

eight black-and-white pictures, and she did not identify any of

them as the robber.  Approximately two-and-a-half weeks later, he

showed her four more photo arrays with eight photographs, and she

did not identify any as the robber.   Then, five months later,

Cappucci told her that a "lead had opened up" in the case, showed

her one more array of eight black-and-white photos, and asked her

"to identify one of the pictures as the suspect."   She testified

that she "did not know if there was a suspect in [this array] or

not," was looking for a man with short strawberry blond hair, and

identified Johnson as the robber based on his "face, the eyes, the

look."   The final photo array consisted of five pictures of men

with dark hair, and Johnson alleges that his picture was the only

-4-

one of a man with light hair, not wearing a shirt, squinting, and with a surly looking, intoxicated expression. Harrington stated that she was absolutely, one hundred percent positive that this was the person who robbed her, and Cappucci told her that she identified the "correct person." She learned that the suspect's name was Richard Johnson and later identified him in court.

## II.   STANDARD OF REVIEW

We review the district court's legal conclusions de novo, and the factual conclusions de novo when, as here, the district court does not undertake independent factfinding. Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we review state court legal and factual determinations under a limited and highly deferential standard: an application for a writ of habeas corpus shall not be granted unless the state court decision upon which it is based (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) involved "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." State court factual findings "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(d)-(e); see also Teti, 507 F.3d at 56-57.

The claim was properly exhausted, so Johnson must show that the state court's determinations, legal or factual, were "objectively unreasonable" to prevail. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); Williams v. Taylor, 529 U.S. 362, 409 (2000). It is not sufficient for the state court's decision to be erroneous, incorrect, or clear error. See Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); Williams, 529 U.S. at 410-11. For the "unreasonable application" prong, the range of reasonable judgment depends on the nature of the rule: "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 662-64 (2004). For the "unreasonable determination of facts" prong, a petitioner must show that state court factual determinations were objectively unreasonable by clear and convincing evidence. See Miller-El, 537 U.S. at 341-42.

## III.  ANALYSIS

The district court did not err in denying Johnson's petition for a writ of habeas corpus. In response to the argument that Detective Cappucci improperly told Harrington that he had a lead and to identify one of the photographs as the suspect, the district court stated that "she also said that she did not know at the time she was shown that there was the suspect in that array and did not remember being told that there was a suspect in that array." It reasoned that even though the case was "thin,"

Harrington "had a vivid memory of the events . . . [and] was being cautious as to the identification." The state trial court was best suited to make the credibility determination, and that determination deserved deference.

In addition, the state court decision did not result in an unreasonable application of Supreme Court precedent. Pretrial identifications violate due process requirements when they are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." See Manson v. Brathwaite, 432 U.S. 98, 105 n.8 (1977) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). The Supreme Court explained that "reliability is the linchpin in determining the admissibility of identification testimony" and when making reliability determinations, the court should consider the totality of the circumstances, including the following factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Id. at 114 (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)).

Johnson argues that the Massachusetts Appeals Court decision unreasonably applied Brathwaite, 432 U.S. 98, and Stovall v. Denno, 388 U.S. 293 (1967). He argues that the identification

was unnecessarily suggestive because (1) Cappucci's statement that a "lead had opened up" was improper, (2) the direction "to identify one of the pictures as the suspect" was impermissibly suggestive, (3) anyone would have selected Johnson because he was the only one that appeared shirtless and squinting with a distinctive surly intoxicated expression, (4) subsequent identifications were tainted when Cappucci told her that she selected the "correct person" and (5) Harrington's testimony was less credible because she denied that Cappucci told her about the lead and that she had selected the correct person. He then argues that the identification was not reliable because (1) she was distracted and focused on the gun, not the robber's face; (2) she was too distraught and terrified to accurately identify Johnson; (3) she admitted that his cap was bent so that she couldn't see his eyes but identified Johnson from his eyes; (4) she only looked at him for a few seconds; (5) her prior identification was minimal and inconsistent; and (6) although her level of certainty was high, over five months had passed.

However, this does not explain how the state appeals court determination was an unreasonable application of Supreme Court precedent. The state court factual findings were not objectively unreasonable under Brathwaite or Stovall.

The Supreme Court upheld the identification procedures in Brathwaite and Stovall. In Brathwaite, the identification was permissible when the witness, an undercover police officer, was

-8-

only shown one picture; the procedure was sufficient because of his ability to make an accurate identification (observation in close range by a trained officer in natural lighting conditions and identification two days later). Brathwaite, 432 U.S. at 99-101, 114-16. In Stovall, an in-person identification was permissible when the suspect was the only African-American suspect in the room because of exigent circumstances (suspect had stabbed witness eleven times and was brought to the hospital the day after surgery for identification). Stovall, 388 U.S. at 295, 302. Here, Johnson was part of a lineup, not alone in person or by a single photograph. Although five of the men allegedly had dark hair, and Harrington was looking for a man with strawberry blond hair, there is no requirement to include a certain number of "filler" photographs in an array. Brathwaite, 432 U.S. at 117. The trial court's credibility determinations – that Harrington was "clear and direct" with a "vivid memory" and her memory, not the actions of the police, led to the identification – are accorded a presumption of correctness. Norton v. Spencer, 351 F.3d 1, 6 (1st Cir. 2003). These determinations were supported by the record because Harrington gave detailed descriptions of the robbers and stated that she did not know whether the suspect was in the array and did not choose Johnson because he was shirtless or because he was squinting.

-9-

Consideration of the Brathwaite factors does not require a contrary conclusion. Harrington had the opportunity to see the robber's face, even his eyes, when he approached her at the counter and looked her in the eyes for several seconds under good lighting conditions. Brief encounters are sufficient for proper identifications. See Brathwaite, 432 U.S. at 114 (two to three minutes was sufficient). She provided an accurate description of Johnson's height, clothing, hair color, and hair style. Her level of certainty was high; she was "one hundred percent positive," and there is no question that the photograph was that of Johnson. There is no evidence that any of the prior arrays included a picture of Johnson, and her prior action supports the conclusion that she resisted whatever suggestiveness inheres in a photo array. Although over five months had lapsed, courts have upheld identifications made after longer periods of time. See, e.g., Biggers, 409 U.S. at 201 (involving a lapse of seven months).

## IV. CONCLUSION

For the foregoing reasons, the district court's decision denying Johnson's petition for a writ of habeas corpus is affirmed.